ARKANSAS GENERAL UTILITIES COMPANY *v.* OGLESBY.

4-3283

Opinion delivered January 15, 1934.

*DuVal L. Purkins* and *Leffel Gentry*, for appellant.
*R. W. Wilson* and *W. F. Norrell*, for appellee.

HUMPHREYS, J. The questions presented on this appeal are: first, whether instruction "B", given at the request of appellee, ignored the defense of contributory negligence interposed by appellant to the alleged cause of action; second, whether instruction "C," given at the request of appellee, made the test of care which he should have exercised when confronted by an emergency a matter within his own judgment or within the judgment of an ordinarily prudent man; and, third, whether the judgment recovered is excessive.

Appellee sued appellant for damages on account of personal injuries received from electric shocks while attempting to disconnect his radio from an overcharged insulated cord and the switch on the porch connecting the service line with the house, which cord and line had become overcharged through the alleged negligence of the employees of appellant. Appellant, at the time, was the owner and operator of a water and electrical system at Wilmar, where appellee resided. Appellee was one of its electric patrons.

The testimony introduced by appellee tended to show that, when the high and excessive current or voltage entered his home, he heard a muffled report like a gun, and discovered that the radio was in flames, and that his house might burn; whereupon he caught the line that connected the radio with the socket and snatched it loose from the connection; that the shock partially blinded him; that the blaze entering the house through the wire looked like jagged lightning, and, in order to prevent the house from burning, he ran out on the porch and threw the switch, at which time he received another shock, resulting in painful and permanent injuries.

Appellant's defense of contributory negligence was based upon the fact that appellee took hold of the cord to disconnect the current from the radio and hold of the switch to disconnect the service line from the house.

(1) Instruction "B," requested by appellee and given by the court, which appellant contends ignored its defense of contributory negligence, is as follows: "You are instructed that corporations can act only through their agents, and it devolves upon the defendant company to have some one available to perform its duties to the public, and you are instructed that notice to an employee of defendant of the alleged defective condition of the wire was notice to the company, and, if you find from a preponderance of the evidence that after notice of the alleged defective condition of the wire the defendant, acting through its agents, carelessly failed, neglected and refused to correct the alleged sagging condition of the wire, if you find it was sagging as alleged in the complaint, and you find from the evidence that the action of the defendant in failing to remedy the sagging condition of the wire after notice of same was negligence, your verdict ought to be for the plaintiff; and, provided you further find that the plaintiff was injured as alleged in his complaint as the direct and proximate result of such negligence, and provided further you find that plaintiff was not negligent."

Appellant argued that the effect of the instruction was to submit to the jury the question of whether the proximate cause of the injury was due solely to the acts

of appellant or solely to the acts of appellee, whereas, appellant was entitled to an instruction to the effect that, although it was negligent, yet, if appellee was also negligent or if the concurrent acts were the proximate cause of the injury, appellee could not recover. We do not construe the last proviso in instruction "B," set out above, to mean that before appellant can be excused from its negligent acts it was necessary for the jury to find that the sole cause of the injury was a separate and distinct negligent act of appellee. Certainly the instruction does not say so, and, when read in connection with instruction No. 8, requested by appellant and given by the court, the real meaning of the last proviso is made plain. Instruction No. 8, as given, is as follows: "You are instructed that it was the duty of the plaintiff, at all times, and under all circumstances, to exercise that degree of care for his own safety as would be ordinarily exercised by a reasonable and prudent man under like circumstances and conditions."

When instructions "B" and 8 are read together, they necessarily mean that, if the concurring negligence of appellant and appellee was the proximate cause of the injury, no recovery could be had against appellant. If appellant's construction of instruction "B" is correct, then it was useless to ask instruction No. 9, which was given by the court, and which is as follows: "It is for the jury to determine whether or not the plaintiff was injured, and if you find that he was, and you further find that he was negligent and that his negligence was the sole and proximate cause of the injury, then he cannot recover, and your verdict will be for the defendant."

(2) Instruction "C," requested by appellee and given by the court, and which appellant contends announces an erroneous test of care when fronted with an emergency, is as follows: "If you find from the evidence in this case that the plaintiff was confronted with an emergency or sudden peril which at the time appeared to him to threaten destruction of his property, and that he, acting in such emergency, jerked a cord that connected the radio with the electric socket in his house and pulled the switch on the porch, he is not thereby alone chargeable

with contributory negligence if he, at the time, acted as a man of ordinary care and prudence would have acted under the circumstances, even though he did not act in the most judicious manner, since an act done in an emergency or extreme circumstance is not to be judged by the same rules which are chargeable ordinarily to acts done in cool blood with time and opportunity for the party to consider the reasonableness and the merit of the act he is about to do.''

Appellant assails the instruction because same did not leave it to the jury to determine whether a reasonable, prudent person would have believed that there was a threatened destruction of appellee's property, but left it to the jury to determine whether appellee himself thought that there was a threatened destruction of his property. This interpretation might be placed upon the instruction if the words ''which at the time appeared to him to threaten destruction of his property'' stood alone and without modification, but the entire paragraph, including the words mentioned, was modified by the words ''if he, at the time, acted as a man of ordinary care and prudence would have acted under the circumstances.'' When read as a whole, the instruction necessarily means that the jury must have found that it appeared to appellee, as a reasonably prudent man, that the destruction of his property was threatened.

(3) According to the testimony introduced by appellee, at the time of his injury he was in good health, earning $120 per month, and he had an expectancy of 15.39 years; as a result of the electrical shocks, he was totally and permanently disabled; as a result of the injury, he suffered great physical pain and mental anguish, and would continue to suffer such pain and anguish throughout life on account of being partially paralyzed and blind for all practical business purposes.

The jury seems to have believed this testimony relative to appellee's condition rather than the testimony introduced by appellant to the contrary, and, in view of such finding by the jury, we cannot say that their award of $10,000 is excessive.

No error appearing, the judgment is affirmed.